***********
The undersigned have reviewed the prior Decision and Order based upon the record of the proceedings before Deputy Commissioner Glenn. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Decision and Order except for minor modifications; therefore, the Full Commission AFFIRMS the Decision and Order of the Deputy Commissioner.
 *********** STIPULATIONS
1. All the parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Tort Claims Act.
2. The issues to be determined by the Full Commission are as follows:
3. Whether plaintiff is entitled to damages for defendants' negligence in the destruction, misplacement, or loss of plaintiff's personal property?
4. What amount of damages, if any, is plaintiff entitled to recover from defendant for injuries and expenses sustained?
 ***********
The Pre-Trial Agreement along with its attachments and any stipulations that have been submitted by the parties are hereby incorporated by reference as though they were fully set out herein.
 ***********
Based on the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff is an inmate incarcerated in various units of the North Carolina Department of Corrections and was so confined for all relevant periods of time concerning his claims.
2. Following transfer from Central Prison to the Marion Correctional Center, plaintiff was told that his wire frame eyeglasses were not allowed any more pursuant to a Department of Corrections policy revision. Plaintiff was informed that his glasses would have to be sent home or destroyed.
3. Stg. Rodney W. Bennett was a correctional officer working at the Marion unit. On January 14, 1999, Stg. Bennett asked plaintiff for the name and address of a family member to whom he could mail plaintiff's wire frame glasses. Plaintiff refused to provide Stg. Bennett with the name or address of a family member to whom the wire frame glasses could be sent. Thereafter, Stg. Bennett turned plaintiff's wire frame glasses over to unit management. The wire frame glasses have not been returned to plaintiff.
4. Correctional officer Derrick E. Fox was present when Stg. Bennett asked plaintiff to provide him with an address and name of a family member plaintiff's wire frame glasses to be mailed. Officer Fox noted that plaintiff refused to provide Stg. Bennett with the name and address of a family member to whom his glasses to be sent.
5. In November 1998, the Department of Corrections implemented a policy change regarding the value of any jewelry inmates could have while incarcerated within the system.
6. Plaintiff was informed that he had more jewelry than he was allowed to have under the new policy and that he would either have to send all jewelry above the allowed value home or it would be destroyed.
7. Stg. Frankie A. Jackson completed an inventory of plaintiff's jewelry that was to be sent home on November 9, 1998. Plaintiff told Stg. Jackson that he thought the jewelry was valued at $785.00.
8. Stg. Jackson took the jewelry to the mailroom. The mailroom log indicated that plaintiff's jewelry was insured for $785.00 and mailed to plaintiff's mother, Cindy Joe Alston at P. O. Box 106, Siler City, North Carolina.
9. Plaintiff claims that his mother never received the box containing the jewelry. Plaintiff indicated that although the box containing the jewelry was insured for his stated value nobody has ever made a claim for payment from the insurance.
10. When plaintiff arrived at the Marion unit he was told that he could only have in his possession twenty-five pictures since he then had more than the number allowed. Plaintiff was told by Officer Patricia L. McEntire that he would have to decide which pictures he wanted to keep and then he would need to give her the name and address of a family member to whom he would like the other pictures sent. Plaintiff initially told Officer McEntire that he did not have the address of his mother but that he would get it for her. Officer McEntire went to plaintiff several more times requesting the name and address; however, plaintiff failed to provide her with the same and in an effort to get plaintiff to provide the name and address she wrote him up for an infraction hoping that plaintiff would provide her with the name and address. When plaintiff failed to provide the name and address of a family member to whom the pictures could be sent, the pictures were destroyed as policy required.
11. Additionally, when plaintiff arrived at the Marion unit he had two pair of name brand tennis shoes that were not state issued. After arriving at the Marion unit there was a policy change in which inmates could not have any brand of tennis shoes but could only have those tennis shoes either provided by the Department of Corrections or sold through the unit canteen.
12. Plaintiff was told that he would have to send his tennis shoes home; otherwise, they would be given to charity or destroyed. Plaintiff refused to provide the name and address of the person to whom he wanted the tennis shoes sent and they were subsequently destroyed.
13. Plaintiff was thereafter offered a pair of tennis shoes from the canteen but he refused to accept the same.
14. While at Marion, plaintiff ordered a radio and set of headphones. When the headphones arrived at the unit, plaintiff was told that he could not have the headphones because they were not a kind of headphones that were allowable pursuant to Department of Corrections policy. Plaintiff was told that the headphones had to either be sent home or destroyed. Plaintiff provided the mailroom with his mother's name and address and on March 16, 1999, Officer Jeffrey Arrowwood placed a package containing the headphones in the U.S. mail addressed to plaintiff's mother in Siler City, North Carolina.
15. The various Officers involved in the handling of plaintiff's personal property gave plaintiff proper notice of what needed to be done with any personal property he could not have as a result of the policies of the Department of Corrections. Further the Officers also properly handled plaintiff's personal property as it was either placed in the U.S. Mail addressed to the individual and address provided by plaintiff or destroyed because plaintiff failed and/or refused to provide the requested information as to whom the property should be sent.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff has failed to show that any of the named employees of the Department of Corrections was negligent in the handling of his personal property. N.C.G.S. § 143-291 et al.
2. Plaintiff has failed to prove by the greater weight of the evidence that the actions of defendant's employees were the proximate cause or contributing cause of any injuries received by plaintiff. Id.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission AFFIRMS the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Plaintiff's claim under the law must be and is hereby dismissed with prejudice.
2. No costs are taxed to either party.
This the ___ day of July 2003.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER